**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

RORY GRIFFIN,

        Plaintiff,

    v.                        Case No. 3:21-cv-00436-NJR

DENNIS LARSON and            Judge Nancy J. Rosenstengel
STEVEN D. YOUNG,

        Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**
**DENNIS LARSON'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Rory Griffin, by his appointed counsel, files this response in opposition to Defendant Dennis Larson's Motion for Summary Judgment (ECF Nos. 88, 89).

### Introduction

Dr. Larson's Motion for Summary Judgment should be denied because there are genuine disputes as to multiple material facts whether Dr. Larson was deliberately indifferent to Plaintiff's serious medical needs and because Plaintiff has suffered injuries as a result of Dr. Larson's conduct and delays.

### Statement of Material Facts

**A.**    **Parties**

1.    Plaintiff Rory Griffin ("Plaintiff") was an inmate of the Illinois Department of Corrections ("IDOC") and was housed at Big Muddy River Correctional Center ("Big Muddy") at all times relevant to the allegations in his Amended Complaint. He has no medical training. *See* Exhibit A, Transcript of Plaintiff's Deposition, pp. 7:19-25,11:6-19.

**RESPONSE:**  Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

2.       Defendant Dr. Dennis Larson ("Defendant") was a medical doctor at Big Muddy at all times relevant to the allegations contained in Plaintiff's Amended Complaint. *See* Exhibit B, Transcript of the deposition of Defendant, Dr. Dennis Larson, pp. 8:1-17.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Dr. Larson testified he was "a site medical director for the Big Muddy River Correctional Center, and [he] oversee[s] the medical care for the incarcerated population, provide[s] examination and treatment, and [he] manage[s] referrals and responses to referrals, and then various administrative duties for the site regarding state and Wexford issues." *Id.* at 8:6–13. "It's all in the healthcare unit" and "all part of the healthcare system," including the physical therapist, under the "medical director." *Id.* at 17:8–16.

**B.      Care and Treatment of Plaintiff Rory Griffin**

**Initial Injury and First Surgery—Left Distal Biceps Tendon Repair**

3.       On June 24, 2019, Plaintiff reported injuring his left arm while lifting weights. Exhibit C, Plaintiff's Medical Records, BMR 271.1

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Disputed as to "June 24, 2019." The record shows April 24, 2019. Ex. C, ECF No. 89-5 at 16, Plaintiff's Medical Records, BMR 271.1.

4.      Plaintiff suffered a left bicep injury resulting in visible deformation of his left bicep and was seen in the healthcare unit the same day. Plaintiff was seen by a physician's assistant in the healthcare unit and diagnosed with a presumptive left biceps tear. The physician's assistant discussed Plaintiff's condition with Dr. Larson, and both agreed to order an urgent orthopedic referral. For initial treatment, ice was applied, and a sling was ordered in addition to Plaintiff's current prescription for Tylenol 325mg, Prednisone, Methotrexate, and Cymbalta. Ex. C, Plaintiff's Medical Records, BMR 14.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Dr. Larson testified that he prescribed or added no medications following the bicep tear to manage the pain. Ex. B, ECF No. 89-2, at 14:21–24.

5.      Dr. Larson treated Plaintiff on May 3, 2019, for Plaintiff's left bicep injury. Dr. Larson ordered a sling for Plaintiff's left arm and an MRI with a one-week follow-up. Plaintiff received the MRI on May 8, 2019, and was diagnosed with a left distal biceps tear. Exhibit C, Plaintiff's Medical Records, BMR 16, 136, 141.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Dr. Larson testified that he prescribed or added no medications following the bicep tear to manage the pain. Ex. B, ECF No. 89-2, at 14:21–24.

6.      Dr. Larson treated Plaintiff again on May 7, 2019, and May 9, 2019. Dr. Larson noted Plaintiff was scheduled for an MRI of Plaintiff's left shoulder/arm on May

14, 2019, and an orthopedic consultation with the Neuromuscular Orthopaedic Institute scheduled for May 17, 2019. Dr. Larson approved both specialist referrals in collegial review on May 14, 2019. Exhibit C, Plaintiff's Medical Records, BMR 21-22, 24, 28.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

7.      The Neuromuscular Orthopaedic Institute indicated they would not be able to perform the surgery until July 2019 and recommended Plaintiff receive surgery by end of June 2019. Exhibit C, Plaintiff's Medical Records, BMR 151-152.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). The record shows "have surgery within next 2 wks." *Id.*

8.      On June 4, 2019, Plaintiff was approved for an orthopedic consultation scheduled for June 13, 2019. On June 14, 2019, Dr. Larson approved Plaintiff's left bicep repair surgery in collegial review, scheduled for June 24, 2019. Plaintiff underwent a left distal biceps repair surgery performed by Dr. Young on June 24, 2019. Exhibit C, Plaintiff's Medical Records, BMR 39, 41, 156.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

9.      Following the left biceps repair surgery on June 24, 2019, Dr. Young placed Plaintiff's left arm in a long-arm cast and prescribed Plaintiff Norco 7.5mg hydrocodone/325mg acetaminophen, and a two-week follow-up. Upon readmission to Big Muddy the same day, Dr. Larson prescribed Plaintiff a three-day supply of Tylenol

#3 (codeine/acetaminophen). Dr. Larson prescribed Plaintiff additional 3-day supplies of Tylenol #3 on June 28, 2019, and July 5, 2019. Dr. Larson also provided Plaintiff with a physical therapy referral. Exhibit C, Plaintiff's Medical Records, BMR 227-228; See Exhibit A, Transcript of the deposition of Plaintiff, Rory Griffin, pp. 18:1-18.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Disputed as to "Dr. Larson also provided Plaintiff with a physical therapy referral," which is not supported in the record.

10.     Norco is not kept on-site at Big Mig Muddy and can take several days to order. Tylenol #3 is a therapeutic substitute for Norco and is readily available at Big Muddy. Dr. Larson's practice is to provide adequate pain medications as indicated by external specialists. Tylenol #3 is an adequate substitution for Norco without increased risk of side effects or complications in Defendant's experience. Exhibit B, Transcript of the deposition of Defendant, Dr. Dennis Larson, pp. 20:12-24, 21:1-15, 25:1-19; Exhibit D, Transcript of the deposition of Defendant, Dr. Steven Young, pp. 21:14-24, 22:1-10.

**RESPONSE:** Disputed as not supported by the record under SDIL-LR 56.1(b). Dr. Larson testified that there is no restriction for Plaintiff on what pain medication he could have (Ex. B, ECF No. 89-2, at 15:13–17) and would certainly either follow or match up with the surgeon's prescription (Ex. B, ECF No. 89-2, at 19:19–20:21).

11.     Plaintiff attended post-surgery follow-up consultations on July 16, 2019, and August 9, 2019. On July 16, 2019, PAC Phillip Erthall at Dr. Young's office noted Plaintiff's incisions were healing well. On August 9, 2019, Plaintiff's cast was removed, and the inclusions were noted as well-healed. Plaintiff had limited range of motion and

was recommended to begin physical therapy. Dr. Larson provided a physical therapy referral the same day. Exhibit C, Plaintiff's Medical Records, BMR 159-160, 163, 165.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Plaintiff testified that "when they remove the cast that was up here, and put one down here and I asked him I asked Dr. Steven Young well, you know, what is this knot [granuloma] doing here? You know, and they would just look over that, you know. And then I was asking them about why am I'm having this burning sensation and it feels like bees stinging me here." Ex. A, ECF No. 89-1, at 44:24–45:9; *see also id.* at 20:19–22:1 (testifying to conversation and continuing complaints); *id.* at 49:14–21 (testifying to conversation and continuing complaints); *id.* at 55:11–56:1 (testifying to conversation and continuing complaints).

12.     Physical therapist Dan Varel treated Plaintiff on August 21, 2019, and recommended physical therapy to work on increasing Plaintiff's range of motion. Exhibit C, Plaintiff's Medical Records, BMR 165.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

13.     In October 2019, Plaintiff attended at least five physical therapy sessions. Dr. Larson treated Plaintiff on October 30, 2019, for Plaintiff's complaints regarding his mobility and feeling in his left arm and ordered a compression sleeve. Dr. Larson also ordered an orthopedic follow-up and additional physical therapy. Exhibit C, Plaintiff's Medical Records, BMR 284-303.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

14.     Plaintiff's orthopedic follow-up was approved on November 8, 2019, and scheduled for November 21, 2019. Exhibit C, Plaintiff's Medical Records, BMR 304.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

15.     Plaintiff completed at least six physical therapy sessions during November 2019. On November 25, 2019, Dr. Larson treated Plaintiff following his orthopedic consultation and scheduled a collegial review regarding Plaintiff's continued left arm/hand issues. Exhibit C, Plaintiff's Medical Records, BMR 303-310, 311.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

16.     On December 9, 2019, Plaintiff was approved for a nerve conduction test to evaluate his continued left arm/hand discomfort, scheduled for February 27, 2020, at St. Mary's hospital. A follow-up was scheduled for March 3, 2020, pending the nerve conduction test results. Exhibit C, Plaintiff's Medical Records, BMR 314, 438-441.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

17.     Plaintiff's nerve conduction test was completed on March 5, 2020, at St. Mary's Hospital. The examining physician notes mild left carpal tunnel syndrome and

mild left ulnar nerve neuropathy at Plaintiff's elbow and wrist. Exhibit C, Plaintiff's Medical Records, BMR 446.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

18.    Plaintiff continued to regularly attend physical therapy sessions from December 2019 through March 2020 when COVID-19 lockdowns began at the facility. Lockdowns began around the end of March, 2020. Exhibit C, Plaintiff's Medical Records, BMR 372, 386; See Exhibit A, Transcript of the deposition of Plaintiff, Rory Griffin, pp. 24:1-25.

**RESPONSE:** Disputed as not supported by the record under SDIL-LR 56.1(b). Dr. Larson testified that there were no restrictions on Mr. Griffin's ability to receive physical therapy. Ex. B, ECF No. 89-2, at 16:13–16.

**Second Surgery—Left Carpal Tunnel Release & Left Ulnar Nerve Decompression**

19.    On March 12, 2020, Dr. Larson treated Plaintiff for his continued pain and ordered collegial review for a rheumatology consultation scheduled for April 21, 2020. On March 17, 2020, Dr. Larson ordered collegial review for additional orthopedic surgery. Exhibit C, Plaintiff's Medical Records, BMR 372, 382, 383.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

20.    On March 13, 2020, Plaintiff attended a follow-up to assess his left arm carpal tunnel symptoms and met with PA Phillip Erthall. Erthall explained to Plaintiff

8

that he may have some component of carpal and cubital tunnel syndrome, but he may also have issues with his neck due to a previous injury and that numbness in his upper arm would not be due to carpal or cubital tunnel syndrome. Erthall explained that the surgery may not relieve all Plaintiff's symptoms. Exhibit C, Plaintiff's Medical Records, BMR 783, 786.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Record shows that Plaintiff stated "he is also having numbness in the forearm which radiates up into the elbow and upper arm." *Id.* Plaintiff also testified that "I made a complaint about the -- about the lump [granuloma] I had back there on the left arm." Ex. A, ECF No. 89-1, at 30:2–6; *see also id.* at 44:24–46:7 (testifying to conversation and continuing complaints); *id.* at 55:11–56:1 (testifying to conversation and continuing complaints).

21.    Plaintiff's second surgery with Dr. Young was approved through collegial review on March 31, 2020. Dr. Young's office was not scheduling selective procedures at the time due to COVID-19 restrictions. Exhibit C, Plaintiff's Medical Records, BMR 388.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Record shows "elective procedures." *Id.*

22.    On April 10, 2020, Plaintiff's rheumatology consultation was cancelled by the external provider's office (Dr. Akhter), with a note Dr. Akhter's office would reschedule. The consultation was later set for July 13, 2020—by Dr. Akhter's office—and later rescheduled to August 18, 2020. Exhibit C, Plaintiff's Medical Records, BMR 574, 653.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

23.     On May 20, 2020, Plaintiff's second orthopedic surgery was scheduled for August 14, 2020. Exhibit C, Plaintiff's Medical Records, BMR 579.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

24.     From May 2020 until Plaintiff's second surgery on August 14, 2019, Dr. Larson regularly met with and treated Plaintiff (approximately 12 visits) and continued Plaintiff's standing prescriptions of Tylenol 325mg and Methotrexate 2.5mg to treat Plaintiff's left arm/hand pain. Exhibit C, Plaintiff's Medical Records, BMR 635, 637, 666, 676, 678, 687, 689; See Exhibit A, Transcript of the deposition of Plaintiff, Rory Griffin, pp. 32:1-18.

**RESPONSE:** Disputed as not supported by the record under SDIL-LR 56.1(b).

25.     Dr. Young performed Plaintiff's second surgery, a left carpal tunnel release and left ulnar Nerve decompression, on August 14, 2019, without complications. Dr. Young prescribed Plaintiff Norco 7.5mg hydrocodone/325mg acetaminophen and provided a home exercise plan and physical therapy recommendation. Upon readmission to Big Muddy the same day, Dr. Larson prescribed Plaintiff a three-day supply of Tylenol #3 (codeine/acetaminophen) in addition to his normal prescriptions, scheduled a collegial review for a follow-up in two weeks, and provided a physical therapy referral. Exhibit C, Plaintiff's Medical Records, BMR 701, 795, 797, 802, 814.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Disputed as to "August 14, 2019." Record shows "August 14, 2020." *Id.*

26.    On August 17, 2020, a nursing note indicates Plaintiff requested additional pain medication. Dr. Larson prescribed an additional 3-day supply of Tylenol #3, and refreshed Plaintiff's prescriptions for Tylenol 325mg. Exhibit C, Plaintiff's Medical Records, BMR 708, 728.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

27.    On August 18, 2020, Plaintiff attended his scheduled rheumatology consultation with Dr. Akhter's office. Dr. Akhter recommended additional imaging/bloodwork, increasing Plaintiff's Methotrexate to 9 pills weekly depending on lab results, and considering prescribing Plaintiff Enbrel or Humira. On August 21, 2020, Dr. Larson ordered collegial review for a follow- up rheumatology consultation in two weeks. Exhibit C, Plaintiff's Medical Records, BMR 712, 716, 800.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

28.    Physical Therapist Dan Varel met with Plaintiff on August 19, 2020 and reviewed a home exercise plan with Plaintiff. Varel recommended an additional visit to review exercises and a follow-up appointment in two weeks. Exhibit C, Plaintiff's Medical Records, BMR 802-806.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

29.     On August 28, 2020, Plaintiff's follow-up consultation and rheumatology consultation were approved in collegial review. Plaintiff's follow-up was scheduled for August 28, 2020, and his rheumatology consultation was scheduled for September 23, 2020. Exhibit C, Plaintiff's Medical Records, BMR 739, 764.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

30.     PA Phillip Erthall at Dr. Young's office treated plaintiff for his follow-up on August 28, 2020, and noted his incisions looked good. Erthall scheduled a follow-up in one month. Exhibit C, Plaintiff's Medical Records, BMR 817-820.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Record shows that Plaintiff complained of "weakness." *Id.* Plaintiff also testified that "I was asking them about why am I'm having this burning sensation and it feels like bees stinging me here. . . . '20, '21, '22, '23 and '24. Why am I still have these complications with my arm, period?" Ex. A, ECF No. 89-1, at 45:7–13; *see also id.* at 55:11–56:1 (testifying to conversation and continuing complaints).

31.     Physical Therapist Dan Varel met with Plaintiff again on September 2, 2020, and noted Plaintiff's left arm range of motion and strength improved. Varel recommended discontinuing Plaintiff's physical therapy and encouraging Plaintiff to continue his home exercise plan. Exhibit C, Plaintiff's Medical Records, BMR 823.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

32.    On September 4, 2020, Plaintiff was scheduled for another follow-up on September 30, 2020. Exhibit C, Plaintiff's Medical Records, BMR 742.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

33.    On October 1, 2020, Dr. Larson ordered a new compression sleeve for Plaintiff's left arm. Exhibit C, Plaintiff's Medical Records, BMR 772.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

34.    Rheumatologist Dr. Akhter saw Plaintiff for his scheduled follow-up appointment on September 23, 2020, and recommended prescribing Enbrel to treat Plaintiff's arthritis. Exhibit C, Plaintiff's Medical Records, BMR 824-828.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

35.    On October 2, 2020, Dr. Larson prescribed Plaintiff Embrel 50mg once weekly for three months and ordered collegial review for a rheumatology follow-up with Dr. Akhter in two months. This consultation was approved, scheduled for November 23, 2020, and later rescheduled to January 25, 2021, and eventually March 22, 2021, due to COVID lockdowns. Exhibit C, Plaintiff's Medical Records, BMR 959, 967, 976, 984.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

36.     Plaintiff attended his rheumatology follow-up with Dr. Akhter's office on March 22, 2021. Dr. Akhter noted Plaintiff indicated he had been on Enbrel for four months but did not think it helped his arthritis pain. Dr. Akhter recommended prescribing Plaintiff Humira. Exhibit C, Plaintiff's Medical Records, BMR 1095.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

37.     On March 24, 2021, Dr. Larson discontinued Enbrel and prescribed Plaintiff Humira to treat his left arm/hand arthritis symptoms in addition to Plaintiff's standing prescription for Tylenol 325mg and Methotrexate. Dr. Larson ordered a three-month follow-up rheumatology appointment with Dr. Akhter's office the same day. Exhibit C, Plaintiff's Medical Records, BMR 1023, 1027, 1029, 1123.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

38.     On June 29, 2021, Plaintiff was treated by Dr. Akhter for his scheduled three-month follow-up. Exhibit C, Plaintiff's Medical Records, BMR 1127-1129.

**Third Surgery—Left Ulnar Granuloma Excision**

39.     On March 24, 2022, Plaintiff attended an external consultation at Crossroads Community Hospital and was treated by Orthopedist Dr. Peter Mulhern. Dr. Mulhern noted Plaintiff presented with complaints of a small lump located on the underside of his left forearm near the incision site from his left distal biceps tendon

repair surgery which was sensitive and at times painful. Dr. Mulhern further noted Plaintiff had good muscle development of his biceps without any defect, good strength, and that Plaintiff's left biceps muscle was clearly functioning well to supinate and flex Plaintiff's elbow. Dr. Mulhern did note some loss of supination and extension, but explained to Plaintiff that the loss of full extension and some supination was consistent with a biceps repair surgery and subsequent immobilization after surgery. Dr. Mulhern discussed the possibility of excising a presumed foreign body granuloma on the ulnar aspect of the forearm because it was sensitive and bothersome to Plaintiff. Exhibit E, Medical Records from Peter Mulhern, M.D., pp. 1-4.

**RESPONSE:** Admitted in part and disputed in part for summary judgment purposes only under SDIL-LR 56.1(b). Record also states that Plaintiff "noticed [granuloma] since his cast was taken off in 2019 told doctor nothing was ever done at that time." Ex. E, ECF No. 89-14, at 1. Plaintiff also stated that "he always felt that there was a palpable mass [granuloma] on the ulnar aspect of the forearm after he was out of the cast. This has continued to be somewhat sensitive in the times painful for him. He also has noted decreased range of motion in supination after the surgery." *Id.* at 3.

40.     On April 19, 2022, Plaintiff underwent surgery with Dr. Mulhern for excision of a suture granuloma of his left forearm without complication. *Id.* at pp. 6-7.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

41.     On November 19, 2022, Plaintiff was transferred from Big Muddy Correctional Center to Pinckneyville Correctional Center. Exhibit F, Plaintiff's Movement History.

**RESPONSE:** Admitted for summary judgment purposes only under SDIL-LR 56.1(b).

## Argument

**I.    There is a genuine dispute, at a minimum, that Dr. Larson was deliberately indifferent to Plaintiff's serious medical needs.**

As the disputed facts and reasonable inferences show, Dr. Larson was deliberately indifferent to Plaintiff's serious medical needs. To determine whether the Eighth Amendment has been violated in the prison medical context, the Court performs a two-step analysis: (1) whether a plaintiff suffered from an objectively serious medical condition, and (2) whether the defendant was deliberately indifferent to that condition. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016).  Here, Dr. Larson has not met his burden of showing there are no material facts in dispute entitling him to summary judgment as to both issues.

**Objectively serious medical needs.** Plaintiff suffered—and Dr. Larson's motion does not dispute—an objectively serious medical condition. "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). A medical condition need not "be life-threatening to be serious; rather, it could be

a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Plaintiff initially suffered a complete tear to his bicep on April 24, 2019, which was diagnosed as requiring multiple treatments. SMF ¶¶ 3–5. After two months of delay, on June 24, 2019, Plaintiff had the bicep repair surgery with Dr. Young as scheduled by Dr. Larson. *Id.* at ¶¶ 8–9.  Following the delayed surgery, Plaintiff then developed a painful granuloma and left ulnar neuropathy at his elbow.  SMF ¶¶ 11–17. Plaintiff repeatedly complained about the pain from both conditions. *Id.* After even more delays and ineffective treatment, Plaintiff was diagnosed by another medical official at St. Mary's Hospital as requiring treatment for his ulnar neuropathy after a nerve conduction study and EMG. *Id.* at ¶¶ 16–17. Years later, Plaintiff was finally diagnosed by a different medical official at Crossroads Community Hospital as requiring treatment and surgical removal of his painful granuloma. *Id.* at ¶¶ 39–40.

Therefore, as Dr. Larson's motion does not even dispute, Plaintiff suffered objectively serious medical needs.

**Deliberate indifference.**  Dr. Larson also has not met his burden of showing there are no material facts in dispute whether he was deliberately indifferent to Plaintiff's serious medical needs.  To show deliberate indifference, a plaintiff need not prove that the official intended harm or believed that harm would occur. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). But showing mere negligence is not enough. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) ("Deliberate indifference is not medical malpractice.").

17

The Seventh Circuit has identified several circumstances that can be enough to show deliberate indifference. First, and most obvious, is an official's decision to ignore a request for medical assistance. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016). An inmate need not show he was "literally ignored," but if a "risk from a particular course of medical treatment (or lack thereof) is obvious enough, a fact finder can infer a prison official knew about it and disregarded it." *Id.* (internal citations omitted). In a medical context, "medical professional's treatment decision must be 'such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.'" *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996).

The Seventh Circuit has explained in *Petties*, for example, if "knowing a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and sends him back to his cell, a jury could find deliberate indifference even though the prisoner received some treatment." 836 F.3d at 730; *see also Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (continuing to treat severe vomiting with antacids over three years created material fact issue of deliberate indifference). Additionally, choosing a "easier and less efficacious treatment" without exercising professional judgment, can also constitute deliberate indifference. *Estelle*, 429 U.S. at 105 (material fact of deliberate indifference where there was a painkiller and ice treatment for suspected fractures).

The record here shows—at the very least, a dispute—that Dr. Larson was deliberately indifferent. As explained above, Dr. Larson was the site medical director for the Big Muddy River Correctional Center, who was responsible to oversee the

medical care for the incarcerated population, provide examination and treatment, and manage referrals and responses to referrals, as well as administrative duties at the site for State and Wexford issues. SMF ¶ 2. Those responsibilities were all in and part of the healthcare unit, even down to the physical therapist, under Dr. Larson as the medical director. *Id.*

**Painful bicep tear.** Dr. Larson was deliberately indifferent to Plaintiff's complete tear bicep. Dr. Larson admitted that he prescribed or added no medications following the complete bicep tear to manage the pain. SMF ¶¶ 4–5. Dr. Larson then took two months to schedule the bicep repair surgery with Dr. Young. *Id.* at ¶¶ 8–9. Dr. Larson had no professional explanation or accepted judgment for this delay, offering only the "sequence of events of trying to get him to an orthopedic surgeon resulted in that time sequence." Def.'s Ex. B, 12:11–16.

**Painful granuloma.** As a result of the delayed ineffective bicep surgery, Plaintiff then developed a painful granuloma at his elbow. SMF ¶¶ 11–17. Plaintiff repeatedly complained about the pain beginning on July 16, 2019, when his cast was removed. *Id.* Plaintiff asked "what is this knot [granuloma] doing here" and "why am I'm having this burning sensation and it feels like bees stinging me here." Def.'s Ex. C, ECF No. 87-3, at 44:24–45:9; *see also id.* at 20:19–22:1 (testifying to conversation and continuing complaints); *id.* at 49:14–21 (testifying to conversation and continuing complaints); *id.* at 55:11–56:1 (testifying to conversation and continuing complaints). But Dr. Larson did not schedule Plaintiff's granuloma diagnosis and removal until *years* later on April 19, 2022. SMF ¶¶ 39–40. Dr. Larson admitted that he knew no reason it took from the cast

removal in July 2019 to the surgery in April 2022 to remove the painful granuloma. Def.'s Ex. B, ECF No. 89-2, at 24:9–11.

**Nerve pain.** Plaintiff also developed severe nerve pain as a result of the bicep surgery. SMF ¶¶ 11–20. But again, Dr. Larson did not schedule Plaintiff's nerve conduction study and EMG until nearly a year later on March 5, 2020, when he was finally diagnosed with left ulnar neuropathy at his elbow and recommended for further treatment. *Id.* at ¶¶ 16–17. Dr. Larson's motion still offers no professional explanation or accepted judgment for this delay. Nor does Dr. Larson's motion identify effective treatment for this nerve pain that still exists to this day. *Id.* ¶ 30.

**Pain medication.** Dr. Larson also failed to provide Plaintiff with prescribed effective pain medication.  Dr. Young repeatedly wrote Plaintiff a prescription for Norco and effective pain medication. Def.'s Ex. D, ECF No. 89-13, at 7:5–12, 11:10-16; Def.'s Ex. C, ECF No. 89, at GRIFFIN-BMR(MR)00797. Plaintiff repeatedly requested his prescribed effective medication. Def.'s Ex. A, ECF No. 89-1, at 31:20–24, 48:8–49:1, 56:10–25. Dr. Larson admitted that there was no restriction for Plaintiff on what pain medication he could have (SMF ¶ 10, Def.'s Ex. B at 15:13–17) and he would certainly either follow or match up with the surgeon's prescription (SMF ¶ 10, Def.'s Ex. B, ECF No. 89-2, at 19:19–20:21). But Dr. Larson failed to provide the prescribed effective pain medication.

**Physical therapy.** Dr. Larson further failed to provide Plaintiff with prescribed effective physical therapy.  As shown above, Plaintiff had significant gaps and did not receive the prescribed physical therapy by Dr. Young.  SMF ¶¶ 9, 11, 12–18, 25, 28, 31.

As the site medical director—who was responsible to oversee the medical care for the incarcerated population, provide examination and treatment, and manage referrals and responses to referrals, Dr. Larson testified that he never ensured physical therapy occurred. Def.'s Ex. B, ECF No. 89-2, at 21:23–22:2, 17:6–16. Dr. Larson admitted that he was responsible for the healthcare unit, including physical therapy. *Id.* And contrary to Dr. Larson's argument (Def.'s Mem. 12–13), Dr. Larson testified that there were no restrictions on physical therapy based on the COVID-19 pandemic. Def.'s Ex. B, ECF No. 89-2, at 16:13–16.

Ultimately, while Plaintiff need not show that he was "literally ignored," a fact finder may find based on the disputed facts that Plaintiff's serious medical conditions—including his bicep tear, painful granuloma, and left ulnar neuropathy at his elbow—were causing him significant pain and that Dr. Larson was not treating the conditions effectively, especially with such significant, years-long delays in treatment. *Petties*, 836 F.3d at 729; *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) ("A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain." (quoting *Gonzalez v. Feinerman*, 663 F.3d 311, 313 (7th Cir. 2011)).

## II.    Plaintiff has suffered harm as a result of Dr. Larson's conduct and delays.

Dr. Larson's final argument—that "Plaintiff has not established an injury or causation"—cannot save his motion and shows the weakness of his position. Def.'s Mem. 16–17.  As the Seventh Circuit has explained, "we only prevent a jury from deciding causation if 'a plaintiff can proffer *no* evidence that a delay in medical treatment exacerbated an injury.'" *Jackson v. Sheriff of Winnebago Cnty., Illinois*, 74 F.4th

496, 501 (7th Cir. 2023); *see also id.* ("It is the 'rare' case that does not meet this threshold at summary judgment.").

Plaintiff's case is the polar opposite of *Roberts v. Neal*, No. 11-CV-266-SMY-PMF, 2016 WL 4267988, at *3 (S.D.Ill. Aug. 15, 2016), as cited by Dr. Larson, where the plaintiff claimed a delay of four to five hours (unlike the *years* of delay here) and submitted no medical evidence of delay or harm (unlike the extensive medical records and testimony here).

Plaintiff's verifying medical records—including his confirmed diagnoses of a torn left bicep, left ulnar neuropathy, nerve pain, painful granuloma, and the related treatment—unquestionably creates a genuine dispute of fact and permits the fact-finder to determine that Dr. Larson's conduct and delay caused harm.

## Conclusion

For these reasons, Defendant Dennis Larson's Motion for Summary Judgment (ECF No. 88) should be denied.

Dated: May 20, 2024                    Respectfully submitted,

*/s/ Brian O. Watson*
Brian O. Watson
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
bwatson@rshc-law.com
docketdept@rshc-law.com

*Appointed Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 20, 2024, these papers were served on all counsel by the CM/ECF system.

Dated: May 20, 2024   Respectfully submitted,

         */s/ Brian O. Watson*
         Brian O. Watson
         RILEY SAFER HOLMES & CANCILA LLP
         70 W. Madison Street, Suite 2900
         Chicago, Illinois 60602
         (312) 471-8700
         bwatson@rshc-law.com
         docketdept@rshc-law.com

         *Appointed Counsel for Plaintiff*

4863-9638-2654, v. 2